# CV-08 3437

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D N.Y

-------------------------------------------------------------------X

ELSIE OUTRAM,

Docket No.          ★   AUG 21 2008   ★

                    Plaintiff,

                                    Civil Action

        -against-                                        LONG ISLAND OFFICE

KEITH OUTRAM and CITIBANK, NA,          **COMPLAINT**

                    Defendants.      **Jury Trial Demanded**   SPATT, J.

-------------------------------------------------------------------X

LINDSAY, M.

Plaintiff, ELSIE OUTRAM, by her attorneys, GOLDSON, NOLAN, CONNOLLY, P.C.,

as and for its Complaint against Defendants, KEITH OUTRAM and CITIBANK, NA, alleges as

follows:

## PARTIES

1.      Plaintiff, ELSIE OUTRAM, (hereinafter "Plaintiff"), was and is a resident of the

State of South Carolina and resides at 121 Shady Lane, Kingstree, South Carolina 29556.

2.      Upon information and belief, Defendant, KEITH OUTRAM (hereinafter

"OUTRAM") was and still is a resident of the State of New York and resides at 859 Troy Avenue,

Brooklyn, New York 11203-3103.

3.      Upon information and belief, Defendant, CITIBANK, NA (hereinafter

"CITIBANK") was and still is a financial institution engaged in the banking industry and doing

business under the laws of the State of New York with offices located at Brentwood Financial

Center, 710 Suffolk Avenue, Brentwood, New York 11717.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction pursuant to 28 U.S.C. §1332(a)(1) as there is diversity

1

of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5.      Venue in this District is proper pursuant to 28 U.S.C. §1391(a) because the Plaintiff's Citibank account that is the subject of this litigation was located at the branch in Brentwood, New York, and, thus, the events giving rise to Plaintiff's claims herein occurred in this District and because CITIBANK resides in this District under 28 U.S.C. §1391(c).

## FACTS

6.      On September 29, 2006, Plaintiff signed a Durable Power of Attorney Effective at a Future Time, commonly known as a Springing Power of Attorney, (hereinafter "Springing Power of Attorney") appointing her son, Defendant OUTRAM, as her attorney-in-fact and granting him the powers enumerated therein upon a certification in writing by a physician that Plaintiff was disabled, incapacitated or incompetent.

7.      Said Springing Power of Attorney specifically stated in its text that "this is intended to constitute a POWER OF ATTORNEY EFFECTIVE AT A FUTURE TIME", and the language, "EFFECTIVE AT A FUTURE TIME" was repeated three times in the body of the document.

8.      Said Springing Power of Attorney further specifically stated that "the powers may only be used after a certification that [Plaintiff has] become disabled, incapacitated, incompetent or that some other event has occurred".

9.      Pursuant to the express language contained in the Springing Power of Attorney, it only became effective upon the signing of written statement by a physician that Plaintiff was disabled, incapacitated or incompetent.

10.     Upon information and belief, Defendant OUTRAM never provided, nor was

2

Defendant CITIBANK ever presented with the required written statement from a physician that Plaintiff was disabled, incapacitated or incompetent, therefore, the Springing Power of Attorney granting Defendant OUTRAM the authority to withdraw Plaintiff's funds was never effectuated.

11.     Despite the requirement that the Springing Power of Attorney only became effective upon a written statement from a physician that Plaintiff was disabled, incapacitated or incompetent, within a one week period beginning October 16, 2006 and ending October 23, 2006, Defendant OUTRAM, without authorization or ratification by Plaintiff, wrongfully withdrew Plaintiff's funds in the amount of $190,714.67, leaving a balance of $16,084.50 in Plaintiff's account at the time of discovery of said theft and conversion.

12.     Despite the requirement that the Springing Power of Attorney only became effective upon a written statement from a physician that Plaintiff was disabled, incapacitated or incompetent, within a one week period beginning October 16, 2006 and ending October 23, 2006, Defendant CITIBANK wrongfully and negligently allowed Defendant OUTRAM to withdraw Plaintiff's funds in excess of $190,000.00, almost all of Plaintiff's life savings, without requiring any proof that Plaintiff was disabled, or incapacitated, or incompetent to satisfy the condition precedent for the powers to be in effect before releasing said funds.

13.     Defendants OUTRAM and CITIBANK wrongfully ignored the terms and conditions of the Springing Power of Attorney that the powers were "effective at a future time".

### COUNT I

### CONVERSION

14.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 13 with the same force and effect as though more fully set forth at length herein.

3

15.     Defendant OUTRAM used the Springing Power of Attorney without Plaintiff's authorization and knowledge to perform an international wire transfer in order to wrongfully convert Plaintiff's funds.

16.     Defendant OUTRAM used the Springing Power of Attorney without Plaintiff's authorization and knowledge to secure joint checks solely with his address in order to wrongfully conceal the withdrawal of Plaintiff's funds.

17.     Plaintiff was unaware of the activity in her account, and the flow of money from her account, for a period of about a month from October 12, 2006 to November 17, 2006. On November 17, 2006, Plaintiff went to her Citibank branch in Brentwood which she transacted her banking activities to ascertain the reason she was no longer receiving her monthly bank statements, at which time Plaintiff was advised by Defendant CITIBANK that her son, Defendant OUTRAM, used the Springing Power of Attorney to withdraw most of the funds in her account at a Citibank branch in Brooklyn, where her son resided and was, upon information and belief, friendly with the branch employees, leaving Plaintiff only $16,084.50 in her account. Plaintiff was distraught and collapsed in the presence of a number of Citibank employees and required subsequent medical treatment.

18.     As a consequence thereof, that same day, Plaintiff immediately cancelled the Springing Power of Attorney to prevent Defendant OUTRAM from withdrawing any further funds and the remainder of her life savings. Defendant CITIBANK further provided Plaintiff with copies of the records pertaining to her account as well as Defendant OUTRAM's fraudulent activities and transactions.

19.     As set forth above, Defendant OUTRAM wrongfully and without authority removed, secreted and converted Plaintiff's funds, including internationally wiring $100,000.00 to an unknown

4

account and withdrawing the balance of $90,714.67.

20.    Defendant OUTRAM's conduct in removing, secreting and converting Plaintiff's funds was wrong.

21.    Defendant OUTRAM failed to return said funds to Plaintiff's account despite due demand.

22.    As a direct and proximate result of Defendant OUTRAM's conversion, Plaintiff suffered damages in the amount of $190,714.67 with interest thereon, and she experienced and continues to experience mental and physical anguish, and pain and suffering as a result of OUTRAM's intentional and/or reckless disregard as set forth above.

23.    Defendant OUTRAM's conduct is gross and morally reprehensible, and of such wanton dishonesty as to entitle Plaintiff to punitive damages in the amount of $1,000,000.00 and reimbursement for her costs and disbursements for this action.

**COUNT II**

**<u>MISAPPROPRIATION OF PLAINTIFF'S FUNDS</u>**

24.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 23 as if fully set forth at length herein.

25.    By virtue of the foregoing facts and circumstances, Defendant OUTRAM wrongfully and fraudulently misappropriated Plaintiff's funds entrusted to his care to her damage and detriment.

26.    As a result of Defendant OUTRAM's misappropriation of Plaintiff's funds, Plaintiff has been damaged in the amount of $190,714.67 with interest, and she experienced and continues to experience mental and physical anguish, and pain and suffering and damages as a result of Defendant OUTRAM's dishonesty and intentional or reckless disregard, and is, therefore, entitled

5

to punitive damages in the amount of $1,000,000.00 and reimbursement for her costs and disbursements.

**COUNT III**

**FRAUD**

27.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 26 with the same force and effect as though more fully set forth at length herein.

28.    Defendant OUTRAM, purportedly concerned about his mother's health and financial well-being, presented the Plaintiff with the subject Springing Power of Attorney for her signature.

29.    After various discussions and representations made to the Plaintiff by Defendant OUTRAM, Plaintiff signed the Springing Power of Attorney granting Defendant OUTRAM various powers over her assets as enumerated therein and upon the terms and conditions stated therein.

30.    Plaintiff, in consideration of a number of factors, including her age and concern for her financial well-being in the event of her future incapacitation, chose her son, Defendant OUTRAM, to be her power of attorney and charged him with the responsibility of managing her finances because she trusted him and he was a successful developer and owner of a not-for-profit educational foundation.

31.    Therefore, on September 29, 2006, Plaintiff, an 85 year old woman, gave her son, Defendant OUTRAM, conditional power of attorney, including power over her account at Citibank, which was effective at a future date upon a written certification from a physician declaring her disabled, incapacitated or incompetent.

32.    Despite the fact that Plaintiff empowered her son with the broad powers enumerated in the Springing Power of Attorney, Plaintiff affirmatively required a physician's certification in

6

writing that she was disabled, incapacitated or incompetent before her son, Defendant OUTRAM, was authorized to exercise the powers enumerated therein.

33.     In reliance on the oral promises and Defendant OUTRAM's assurances that he would pay her bills and manage her assets in the event of her incapacitation, Plaintiff appointed him as her attorney-in-fact.

34.     Plaintiff also relied on his promise to exercise the power only upon the written certification by a physician that Plaintiff was unable to make her own financial decisions or adequately care for herself.

35.     Despite such reliance, Defendant OUTRAM, with the intent to defraud Plaintiff wrongfully withdrew virtually all of Plaintiff's savings within a couple of weeks of her signing of the power of attorney, without her authorization or consent, effectively leaving her destitute, and deliberately concealed said withdrawal by changing the address on her account to his address.

36.     As a direct and proximate result of Defendant OUTRAM's material misrepresentations and fraudulent acts, Plaintiff suffered damage therefrom in the amount of $190,714.67 with interest, and she continues to suffer damages and is, therefore, entitled to redress for her loss with reimbursement for her costs and disbursements and punitive damages in the amount of $1,000,000.00 due to Defendant OUTRAM's gross and morally reprehensible conduct, and his wanton dishonesty.

**COUNT IV**

**BREACH OF FIDUCIARY DUTY**

37.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 36 with the same force and effect as though more fully set forth at length herein.

7

38.     Defendant OUTRAM, as Plaintiff's attorney-in-fact, owed a duty to Plaintiff to properly act upon, effectuate or employ the Springing Power of Attorney pursuant to its terms and conditions.

39.     Based on the foregoing facts, Defendant OUTRAM breached his fiduciary duty to the Plaintiff to her damage and detriment in the amount of $190,714.67 with interest.

40.     Defendant OUTRAM's conduct was carried through with malicious intent to cause harm to Plaintiff, and as a consequence Plaintiff is entitled to reimbursement for her costs and disbursements and a punitive award in the amount of $1,000,000.00.

<h3 align="center">COUNT V</h3>

<h3 align="center">BREACH OF CONTRACT</h3>

41.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 40 with the same force and effect as though more fully set forth at length herein.

42.     On October 12, 2006 and October 13, 2006 the sums of $114,519.39 and $89,200.53, were deposited into Plaintiff's account at Citibank at the direction of Defendant OUTRAM, without the knowledge of Plaintiff.

43.     Subsequently, during the period of October 16, 2006 through October 23, 2006, Defendant OUTRAM wrongfully withdrew the sum of $190,714.67 from Plaintiff's account using an ineffective Springing Power of Attorney.

44.     Defendant CITIBANK failed to follow the explicit instructions of the Plaintiff in her Springing Power of Attorney and failed to act in conformity with Plaintiff's order, and wrongfully disbursed Plaintiff's deposits, without her authorization or knowledge.

45.     As a result of the foregoing, Defendant CITIBANK breached its contract to hold and

disperse Plaintiff's funds in accordance with the terms and conditions imposed by the Plaintiff, to her damage and detriment in the amount of $190,714.67 with interest.

## COUNT VI

### NEGLIGENCE

46.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 45 with the same force and effect as though more fully set forth at length herein.

47.     Upon information and belief, during the period from on or about October 16, 2006 through October 23, 2006, Plaintiff's son, Defendant OUTRAM, presented CITIBANK with the Springing Power of Attorney to withdraw funds from Plaintiff's account.

48.     The subject Springing Power of Attorney contained a condition precedent and did not automatically grant Defendant OUTRAM unrestricted authority with regard to Plaintiff's Citibank account.  In fact, the subject Springing Power of Attorney placed restrictions on when Defendant OUTRAM's authority was effective.

49.     Accordingly, Defendant CITIBANK owed a duty to Plaintiff, independent of the contract obligation, to properly administer the Springing Power of Attorney pursuant to its terms and conditions, and Defendant CITIBANK breached that independent duty.

50.     Upon information and belief, Defendant CITIBANK failed to require the physician's statement necessary to determine that Plaintiff was disabled, incapacitated or incompetent to effectuate Plaintiff's son, Defendant OUTRAM's powers pursuant to the Springing Power of Attorney.

51.     Consequently, the Springing Power of Attorney presented to Defendant CITIBANK by Defendant OUTRAM to withdraw the funds from Plaintiff's account was ineffective and should

not have been accepted and honored by Defendant CITIBANK.

52.     Upon information and belief, Defendant CITIBANK erroneously and negligently treated the Durable Power of Attorney as a Statutory Short Form Power of Attorney which was effective immediately as opposed to a Springing Power of Attorney which only became effective at a future time upon a showing by a physician's statement that Plaintiff was disabled, or incapacitated, or incompetent.

53.     Based on the foregoing facts, Defendant CITIBANK was negligent by releasing Plaintiff's funds without requiring proof of the condition precedent establishing the incapacity of Plaintiff before allowing the funds to be drawn.

54.     As a result of Defendant CITIBANK's negligence and breach of duty, Plaintiff has been damaged in the amount of $190,714.67 with interest, and will continue to suffer damages in the future as a consequence thereof.

**COUNT VII**

**<u>NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS</u>**

55.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 54 with the same force and effect as though more fully set forth at length herein.

56.     Plaintiff is presently 87 years old, and was 85 years old when the wrongful and negligent acts took place.

57.     When Plaintiff learned that her funds were wrongfully and negligently allowed to be withdrawn by her son at a Citibank branch in Brooklyn, where her son resided and was, upon information and belief, friendly with the branch employees even though her account was opened with the Citibank branch in Brentwood, without sufficient proof provided to Defendant CITIBANK of

her disability, incapacitation or incompetence, Plaintiff collapsed at the Brentwood branch in utter disbelief and despair, and subsequently required medical assistance.

58. It was and continues to be extremely distressing to Plaintiff that virtually all of her life savings, except for the sum of $16,084.50, was wrongfully removed from her account, and that Defendant CITIBANK and/or its predecessor, European American Bank, with whom she had a banking relationship with for 30 years and entrusted her funds was grossly at fault, and played a significant role in the wrongdoings.

59. Defendant CITIBANK's negligent conduct caused severe emotional distress to Plaintiff, and continues to cause severe emotional distress to Plaintiff.

60. As a consequence of the foregoing, Plaintiff is entitled to compensatory damages from Defendant CITIBANK in an amount to be determined at trial.

**COUNT VIII**

**AIDING AND ABETTING CONVERSION**

61. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 60 as if fully set forth at length herein.

62. Upon information and belief, Plaintiff's son, Defendant OUTRAM secreted and converted the funds.

63. As fully described above, Plaintiff's son's conduct in removing and secreting Plaintiff's funds was wrong.

64. Upon information and belief, Defendant CITIBANK had actual knowledge of the wrongful conduct by Plaintiff's son, Defendant OUTRAM, and affirmatively assisted in the unauthorized conversion of funds from Plaintiff's account.

11

65.     Upon information and belief, Defendant CITIBANK helped conceal the theft by wrongfully sending the account information to her son, Defendant OUTRAM's address instead of to Plaintiff's address without Plaintiff's authorization.

66.     Upon information and belief, Defendant CITIBANK helped Plaintiff's son, Defendant OUTRAM, secure joint checks solely with his address also without authorization in order to wrongfully conceal the withdrawal of Plaintiff's funds.

67.     Upon information and belief, when Plaintiff discovered Defendant OUTRAM's wrongdoings the money had already been wrongfully released by Defendant CITIBANK.

68.     Defendant failed to act by returning said funds to Plaintiff's account, thereby allowing the theft and conversion to occur.

69.     As a direct and proximate result of CITIBANK's aiding and abetting conversion, Plaintiff suffered damages in the amount of $190,714.67 with interest, and she experienced and continues to experience mental and physical anguish, and pain and suffering as a result of CITIBANK's intentional or reckless disregard as set forth above, and is, therefore, entitled to punitive damages in the amount of $1,000,000.00 and reimbursement for her costs and disbursements.

## COUNT IX

## AIDING AND ABETTING FRAUD

70.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 69 as if fully set forth at length herein.

71.     Upon information and belief, Defendant CITIBANK aided and abetted Defendant OUTRAM's fraud.

72.     Upon information and belief, Defendant CITIBANK had actual knowledge of the fraud and provided substantial assistance in the fraudulent activities as described above.

73.     As a direct and proximate result of CITIBANK's acts, Plaintiff suffered damage therefrom in the amount of $190,714.67 with interest.

74.     Due to the egregious nature of CITIBANK's conduct, Plaintiff is entitled to redress for her loss in the amount of $190,714.67 with interest and reimbursement for her costs and disbursements and to an award of punitive damages in the amount of $1,000,000.00.

**WHEREFORE,** Plaintiff hereby demands judgment against Defendants OUTRAM and CITIBANK, as follows:

1.     On the First Count:

(a)     judgment against Defendant OUTRAM in the amount of $190,714.67 with interest from October, 2006;

(b)     judgment against Defendant OUTRAM for Plaintiff's costs and disbursements of this action;

(c)     judgment against Defendant OUTRAM in the sum of $1,000,000.00 for exemplary and/or punitive damages; and

(d)     for such other and further relief as to this Court may deem just and proper together with the costs and disbursements of this action.

2.     On the Second Count:

(a)     judgment against Defendant OUTRAM in the amount of $190,714.67 with interest from October, 2006;

(b)     judgment against Defendant OUTRAM for Plaintiff's costs and

13

disbursements of this action;

(c)     judgment against Defendant OUTRAM in the sum of $1,000,000.00 for exemplary and/or punitive damages; and

(d)     for such other and further relief as to this Court may deem just and proper together with the costs and disbursements of this action.

3.     On the Third Count:

(a)     judgment against Defendant OUTRAM in the amount of $190,714.67 with interest from October, 2006;

(b)     judgment against Defendant OUTRAM for Plaintiff's costs and disbursements of this action;

(c)     judgment against Defendant OUTRAM in the sum of $1,000,000.00 for exemplary and/or punitive damages; and

(d)     for such other and further relief as to this Court may deem just and proper.

4.     On the Fourth Count:

(a)     judgment against Defendant OUTRAM in the amount of $190,714.67 with interest from October, 2006;

(b)     judgment against Defendant OUTRAM for Plaintiff's costs and disbursements of this action;

(c)     judgment against Defendant OUTRAM in the sum of $1,000,000.00 for exemplary and/or punitive damages; and

(d)     for such other and further relief as to this Court may deem just and proper.

5.     On the Fifth Count:

14

(a)     judgment against Defendant CITIBANK in the amount of $190,714.67 with interest from October, 2006 and for such other and further relief as to this Court may deem just and proper together with the costs and disbursements of this action.

6.     On the Sixth Count:

(a)     judgment against Defendant CITIBANK in the amount of $190,714.67 with interest from October, 2006 and for such other and further relief as to this Court may deem just and proper together with the costs and disbursements of this action.

7.     On the Seventh Count:

(a)     judgment against Defendant CITIBANK in an amount to be determined at trial, and for such other and further relief as this Court may deem just and proper together with the costs and disbursements of this action.

8.     On the Eighth Count:

(a)     judgment against Defendant CITIBANK in the sum of $190,714.67 with interest from October, 2006;

(b)     judgment against Defendant CITIBANK for Plaintiff's costs and disbursements of this action;

(c)     judgment against Defendant CITIBANK in the sum of $1,000,000.00 for exemplary and/or punitive damages; and

(d)     for such other and further relief as to this Court may deem just and proper.

9.     On the Ninth Count:

(a)     judgment against Defendant CITIBANK in the sum of $190,714.67 with interest from October, 2006;

15

(b)   judgment against Defendant CITIBANK for Plaintiff's costs and

disbursements of this action;

(c)   judgment against Defendant CITIBANK in the sum of $1,000,000.00 for

exemplary and/or punitive damages; and

(d)   for such other and further relief as to this Court may deem just and proper.

10.   For such other and further relief as to this Court may deem just, proper and

equitable.

Dated: Hauppauge, New York
       August 20, 2008

JUNE CONNOLLY (JC 6436)
GOLDSON NOLAN CONNOLLY, P.C.
Attorneys for Plaintiff
145 Marcus Boulevard, Suite 4
Hauppauge, New York 11788
631-236-4105


TO:   KEITH OUTRAM
      859 Troy Avenue
      Brooklyn, New York 11203-3103

      CITIBANK, NA
      Brentwood Financial Center
      710 Suffolk Avenue
      Brentwood, New York 11717

16

## INDIVIDUAL VERIFICATION

STATE OF NEW YORK )

                :s.s.

COUNTY OF SUFFOLK)

    **ELSIE OUTRAM,** being duly sworn, deposes and says, that deponent is the Plaintiff in the within action; that deponent has read the foregoing Complaint and knows the contents thereof; that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters deponent believes it to be true.

**ELSIE OUTRAM**

Sworn to before me this
20th day of August, 2008.

Notary Public

JUNE CONNOLLY
Notary Public, State of New York
No. 02CO5000635
Qualified in Suffolk County
Commission Expires August 17, 20___